UNITED STATES DISTRICT COURT DISTRICT OF COLUMBIA

**Complaint - (Tort) Unfair and Deceptive Trade Practices, Breach of Contract & Gross Negligence with Malice**

**Parties**

*Plaintiff*

Adaeze Nwosu
11630 Leesborough Circle
Silver Spring MD
20902
USA

V.S

*Defendant*

Four Seasons Hotels Limited
1165 Leslie Street
Toronto, Ontario M3C 2K8
Canada
Attn: General Counsel

Case: 1:24-cv-00025
Assigned To : Cooper, Christopher R.
Assign. Date : 1/2/2024
Description: Pro Se Gen. Civ. (F-DECK)

Case No. _____

26th December 2023

1

## Complaint – (Tort) Unfair and Deceptive Trade Practices, Breach of Contract & Gross Negligence with Malice

*1. Background of Parties*

Ms Nwosu (Plaintiff) is an international businesswoman, maintaining a portfolio of global businesses across the hospitality, luxury lifestyle and marketing industries.

The Four Seasons Limited (Defendant), herein "the hotel" or "Four Seasons," is a 5-star Hotel, headquartered in Canada, with branches across the United States. The hotel claims to have a "single – minded" dedication to the highest of standard.

Ms Nwosu began staying at the Four Seasons in October 2023, at the Houston location on 1300 Lamar Street Location and became acquainted with the brand. The Four Seasons, whenever she was in the US, became her choice location to lodge. Eventually she lodged at the Four Seasons, Washington D.C, USA location in November 2023, located at 2800 Pennsylvania Avenue NW, Washington, DC 20007. During her stay at the Four Seasons Hotel in Washington, DC, Ms Nwosu happened upon the Guarisco Gallery, located at 2828 Pennsylvania Avenue NW, Washington, DC, 20007, just adjacent to the hotel. Ms Nwosu learned that the landlord of the gallery was the adjacent Four Seasons Hotel Limited. Ms Nwosu had been seeking a suitable location for her luxury lifestyle brand, MonAfrique Lifestyle Limited, and her partner café, Fresh Baguette, LLC since February 2023, within the cosmopolitan DC & Maryland areas.

*2. Basis of Jurisdiction  - Diversity of Citizenship*

This case is brought into this federal district court under "Diversity Jurisdiction," Whereas, Ms. Nwosu, plaintiff, is a citizen of Nigeria, Whereas, the Four Seasons Hotel is a Canadian corporation, and has various hotel branches, across the United States, including Washington, D.C, and Whereas the amount in controversy exceeds $75,000.00. exclusive of interest and costs and thus fulfils the monetary relief requirement of 28 USC 1332.

3. *Basis of Jurisdiction - Venue*

Pursuant to § 13-422 and § 13-423 (1) (2) (4) (5) of the District of Columbia Long Arm Statute, this United States District Court may exert specific jurisdiction over the Four Seasons Limited, a foreign corporation, because the hotel has a long enduring relationship with the District of Columbia: The Four Seasons Hotel Washington, DC has been operating and transacting in Washington DC since 1979. The defendant possesses real property in the district of Columbia, and regularly does business in the district.

4. *Statement of Claims*
    4.1. Unfair or deceptive trade practice with Malice
        The plaintiff avers that the defendant, by subtly using vague, ambiguous, and unclear terms, and by intentionally not clarifying their intentions or providing evidence, upon her request, effectively deprived her of an opportunity to rent the commercial retail space located at the aforementioned 2828 Pennsylvania Avenue NW, Washington, DC, 20007. Upon speaking with Mr McLean, the incumbent gallery curator/tenant of the retail space at 2828 Pennsylvania Avenue NW, Washington, DC, 20007 on November 30th 2023 and he confirmed to Ms Nwosu that the gallery owner would not renew her lease and the space would be available. On December 26th 2023, Mr McLean mentioned the hotel informed him they would not be using the space for the next four - six months, so the incumbent gallery owner would opt to stay an additional two months. This is direct contrast to what Mr Reynal, President of the Four Seasons; Mr Bernand, Vice President of the Four Seasons, and Mr Philips, Director of Marketing at the Four Seasons, had repeatedly informed Ms Nwosu between 1 December – 15th December 2023, when she enquired about leasing the same space for her gallery. All three misled her, deceived, and outright lied to her, by stating at different times, that the space was unavailable, that they intended to reclaim the space and utilize it, that she should look elsewhere. These lies are intentional torts and an act of malice.

Thus, the hotel violated DC Code §28-3904, whereby "it shall be a violation of that chapter for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to:

(e) misrepresent as to a material fact which has a tendency to mislead

(e-1) represent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(f) fail to state a material fact if such failure tends to mislead;

(f-1) use innuendo or ambiguity as to a material fact, which has a tendency to mislead."

The plaintiff avers that she was indeed misled and suffered a loss of opportunity to rent a commercial retail space; loss of revenue as a result of the unfair and deceptive trade practice.

4.2. Breach of Contract & Gross Negligence

The Four Seasons Hotels advertises itself as a 5-star luxury hotel, dedicated to delivering the "highest standard" of care and utmost attention to its guests needs as a form of personalized luxurious experience. Thus, guests accept to pay exorbitant prices to stay at the defendant's hotels with this understanding and expectation, forming a contract. Guests as part of their contract, and in compliance with inn keeper laws, are supposed to be treated fairly, with equal dignity. Whereas, the plaintiff provides multiple instances across the hotel's four locations, in Houston, Denver, Fort Lauderdale, and Washington D.C where the hotel (d) represented that their services were of particular standard, quality, when in fact they were of a different/lower standard, and treated her unfairly, lied to her because of her race, ethnicity, skin color. In letter to the senior management, the hotel's senior employees acknowledged this subpar standard as unreflective of its advertised standard. The fact that the hotel chains were consistently having lapses in service quality is indicative of gross negligence in upholding standards, whereas they still charge consumers as though they were

upholding these highest standards and delivering the product/service they advertise.

5. *Statement of Facts to Support Claims*

    5.1. On November 30th 2023, Ms Nwosu avers that upon speaking with the curator at the Guarisco Gallery, Mr Randall McLean, she learned that the current tenant would be closing their physical location at 2828 Pennsylvania Avenue NW, Washington, DC, 20007, to sell online primarily. At the end of the year, the owner of the gallery would not be renewing the lease, and the space would be available to rent.

    5.2. Ms Nwosu understood from the curator they had been long term lessors of that space for about 40 years on and off, and that it had always been a gallery space.

    5.3. Ms Nwosu returned to the Four Seasons Hotel that evening, and spoke with concierge, Tony, to lay her request to leasing the space. Tony mentioned he would refer her to the appropriate person for enquiries.

    5.4. That evening on November 30 2023, Tony copied Ms Nwosu on an email to Mr Austin Philips, the Director of Marketing at the Four Seasons Hotel Washington, DC, regarding her leasing enquiry.

    5.5. On December 1 2023, Ms Nwosu wrote to Mr Philips with her business email adaeze@monafrique.com , to affirm she was interested in leasing the space that would soon become available, and which she realized she was the first enquirer.

    5.6. Mr Philips responded to Ms Nwosu that the space was not available but would let her know when it would become available.

    5.7. Ms Nwosu found Mr Philips email misleading, as she had been informed by the curator that they would be vacating the premises and not renewing their lease at the end of the year.

    5.8. Ms Nwosu wrote back to Mr Philips, seeking further clarity, to which Mr Philips did not respond initially.

    5.9. On December 4 2023 Ms Nwosu wrote to Mr Reynal, the President of the Four Seasons, at the Corporate level, to lay complaints of the Hotel, which she had encountered at her previous stays in Denver and Fort Lauderdale, and current

stay in Washington D.C, wherein the hotel had failed to live up to its advertised and duty to guests of Highest Standard of Hospitality and Care.

5.10. Ms Nwosu cited several instances, with evidence of subpar quality of their claim to be a 5-star hotel of a highest standard, including but not limited to, the use of old and fraying towels, poor customer service, inconsistent service amenities across the brands, and undertones of subtle discriminatory behavior by their employees.

5.11. Ms Nwosu, avers she made these observations and feed back in good faith, as one business owner to another, even volunteering her expertise for free by taking the time to articulate in detail an e-mail so the hotel could improve their brand.

5.12. Ms Nwosu thus avers she had no ulterior motives in suggesting this feedback.

5.13. Ms Nwosu's written feedback/complaints was responded to by the Vice President, Mr David Bernand, on December 5th, in writing and he later followed up with a call.

5.14. Mr Bernand seemingly welcomed Ms Nwosu's observations and feedback to improve the hotel's brand and standards, and mentioned he would follow up with Denver and Fort Lauderdale branches to ensure compliance with brand standards.

5.15. Mr Bernand provided Ms Nwosu with an explanation concerning the purported unavailability of the gallery space located 2828 Pennsylvania Avenue NW, Washington, DC, 20007. He advised the Hotel planned to "reclaim" the gallery space for internal use. However, he was not quite sure what they would use it for, and had proposed a café, banquet hall. He advised Ms Nwosu to look elsewhere in Georgetown and connected her to a commercial leasing colleague.

5.16. On the call, Ms Nwosu explained to Mr Bernard, the Vice President of the Four Seasons, she had been looking for a prime retail location to launch her art gallery concept store and café and to carefully position her brand in a new market.

5.17. Ms Nwosu had entered into a partnership/MOU with Mr Bertrand, a co-owner of Fresh Baguette LLC, a premium café, which sought to expand into 7 new locations. She had been looking for a prime location for both the café and concept store since February 2023.

6

5.18. Ms Nwosu sought to mitigate the potential loss of the space, and obliged Mr Bernard in looking elsewhere, in good faith, given that he had made a recommendation.

5.19. Unfortunately, the six options in Georgetown that Ms Nwosu had regarded, at Mr Bernard's recommendation were unsuitable for various reasons.

5.20. On December 11th 2023, Ms Nwosu wrote back to Mr Bernard explaining the unsuccessful outcome of the search, and advocated for a flexible lease model or space, to accommodate both the hotel's supposed needs for additional space. She further suggested since she already had an existing partnership with a premium French café brand, which Mr Bernand knew of and enjoyed, she would be in a prime position to start.

5.21. Mr Bernard wrote back on December 12th 2023 stating they had "every intention" to take the retail space in house and run it in house as well.

5.22. Ms Nwosu was aware that the Four Seasons hotel in DC would be expanding and were constructing their private Residences for launch in the coming years, which would provide more space.

5.23. She noted Mr Bernard's vague terms and wrote an email to clarify to both Mr Bernard and Mr Reynal, if they already had business plans, an approved concept design for the space, a budget, approval from the Board, and their timeline to actually reclaim the space.

5.24. Ms Nwosu did not get any response on any of the above enquiries.

5.25. Ms Nwosu noted that at the Four Seasons Hotel & Residence, Houston where she had taken out a short-term residential lease, there were spaces which were already flexibly adapted on an ad-hoc basis, just as she had proposed to Mr Reynal and Mr Bernard in her emails between December 11 – December 15 2023. In particular, there was an open space on the third floor, where Ms Nwosu had seen different stacks of chairs outside the third-floor residence stairway, to accommodate the type of event taking place. She had witnessed dinners, birthdays, speaking occasions with mini stages, magic shows, with different flexible furniture and arrangements to adapt to the occasion. Ms Nwosu upon

seeing these mixed uses, realized the flexible models she had proposed were evidently feasible and already in use by the hotel (**Exhibit D**).

5.26. Furthermore, within the building of the Four Seasons itself, Ms Nwosu realized the hotel had leased spaces to comparable non-proprietary luxury and/or upscale business owners, including a French-German luxury perfumer "Krigler," and independent chef run "Bayou and Bean/ Bayou & Bottle."

5.27. Later, on December 26th 2023, Ms Nwosu spoke with Mr Mclean, who informed her the hotel let the gallery know, it wouldn't be using the space for the next six months, and thus the gallery owner had decided to remain for the next two months, instead of packing out at the end of the 2023 year.

5.28. This revelation is in stark contradiction to the claim of Mr Bernand and Mr Philips that the hotel had "every intention" to reclaim the space and that it was unavailable. This was just a "front."

5.29. Ms Nwosu already described herself as African, and her pictures in her emails show her as a black woman. Her signature on her email clearly denotes that her brand seeks to promote development in Africa, thus Mr Philips, Mr Rayal and Mr Bernard, were fully aware of her ethnic origin, race and skin color, and business intentions.

5.30. It is a well-known fact that Africans are depicted as poor, and countries in the continent were colonized by French, German, Spanish and in general European conquests. It is also a fact that as a result of this history of conquest over former colonies, a lingering sentiment of superiority manifests among Westerners and Europeans.

5.31. It is also a well-known fact that Africans are often coerced into signing treaties and unfair trade agreements with European counterparts, which restrict their ability to develop and generate wealth, even if they wanted to, and instead maintain the status-quo of exploitation and poverty on the continent.

5.32. It thus occurred to Ms Nwosu that she was being treated unfairly, exploited, and "being played for a fool," wherein the defendant was ever readily happy to take her business as a hotel guest patron, **yet would misrepresent facts which have tendency to mislead, and not provide clarity when sought; represent that**

**that a transaction has obligations which it does not have (yet), by stating they had an intention to claim the space ; use innuendo or ambiguity as to the availability and flexibility of the space, which was ultimately misleading and made her suffer losses and suffer pain and humiliation.**

5.33. It became readily apparent to the plaintiff that the sad reality was the defendant did not want to lease the space to Ms Nwosu, an African Black Woman, or even give an opportunity to learn about her luxury brand, and instead were subtly, discreetly, inadvertently, and yet most **certainly** treating her unfairly, all the while happily taking her money.

5.34. As a result of this <u>intentional</u> unfair and deceptive trade practice, Ms Nwosu has been denied the opportunity to lease an otherwise commercially available space at 2828 Pennsylvania Avenue NW, Washington, DC, 20007, without any clear and convincing plans at the time of leasing enquiry to do anything with it for the next six months. It appears the defendant is simply content to deny Ms Nwosu of the opportunity to avail of the space, **even when she mentioned she can afford the lease of $150,000 (see Exhibit C ) and already had the partnership with a prestigious café, which the hotel had alluded to wanting, yet did not have.**

5.35. Ms Nwosu duly mitigated in trying to find alternative locations and mentioned she had been looking since February 2023. In fact, the recommendation Mr Bernard provided yet pointed her back to a discriminatory realtor, of whom Ms Nwosu had previously advised Mr Philips and Bernard, and would not be suitable.

5.36. Thus, for at least the next six months Ms Nwosu has lost an ability to generate revenue on her brick-and-mortar store, amounting to about $7000 per day in café revenue alone. This is amounting to a loss in revenue of about $1,260,000.00 in café sales alone, not including art and home décor sales.

5.37. At the Houston hotel location, Ms Nwosu had agreed to a lease contract allowing for housekeeping three times per week and was told she could change the days to conform to her schedule, but this was not her experience, instead she repeatedly experienced poor housekeeping service, wherein the housekeeping

manager, Evelyn, would deliberately and intentionally withhold housekeeping services when Ms Nwosu asked for it, until a time that inevitably constituted a nuisance for Ms Nwosu and hurt her ability to focus and work. Ms Nwosu reported the matter at least three times to management.

**5.38.** This intentional disregard of contractual terms resulted in a gross nuisance and annoyance on the part of Ms Nwosu, whose work was repeatedly hampered by poor and negligent housekeeping services. This experience is contrary to the Four Seasons promise to provide "a dedicated focus on how people want to be treated, grounded in the genuine care you experience during your stay and defined by an abundance of humanity and generosity."

**5.39.** The fact that this drop in standard happened across at least three distinct hotel branches repeatedly, shows the grossly negligent nature of the hotel in maintaining its "highest" standards of care **(Exhibit B)**.

## 6. Relief

Wherefore, owing to the breach of contract, gross negligence, and willful unfair trade and/or deceptive trade practices with malicious intent, Ms Nwosu seeks compensatory and punitive damages in excess of $1,500,000.

## 7. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case- related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

_Adaeze Nwosu_

Adaeze Nwosu

(Plaintiff)

ireoma@gmail.com

11630 Leesborough Circle,

Silver Spring, MD, 20902

2028554226