**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ADAEZE NWOSU**, | |
| Plaintiff, | |
| v. | Case No. 24-cv-00025 (CRC) |
| **FOUR SEASONS HOTELS LIMITED**, | |
| Defendant. | |

## MEMORANDUM OPINION

Luxury travelers worldwide extol the Four Seasons hotel chain for its five-star service and amenities. Plaintiff Adaeze Nwosu is not among them. In this *pro se* lawsuit, Ms. Nwosu claims she received substandard service at several Four Seasons locations across the United States. She further asserts that the Four Seasons in Washington, D.C. unlawfully refused to rent her space for a would-be art gallery and café.

The Four Season moves to dismiss Nwosu's complaint for failure to state a claim and opposes her request for leave to file an amended complaint on grounds of futility. For the reasons explained below, the Court will dismiss the case. It will do so, however, because it lacks subject matter jurisdiction. It will also deny Nwosu leave to amend, deny Nwosu's motion for sanctions, deny as moot the Four Seasons' motion to strike Nwosu's jury demand, and grant the Four Seasons' motion to strike Nwosu's notice of interlocutory appeal.

### I. Background

#### A. Factual Background

The Court takes the following facts from Nwosu's filings as true. See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005).

Nwosu is a Nigerian citizen.  Compl. ¶ 2.  The Four Seasons is a Canadian corporation headquartered in Canada, with hotel branches across the United States.  Id. ¶¶ 1–2.

The events underlying this lawsuit all occurred in the United States.  In 2023, Nwosu learned that an art gallery leasing a property from the Four Seasons in Washington, D.C. would not be renewing its lease.  Compl. ¶ 5.1.  Nwosu emailed the hotel's marketing director, seeking to lease the gallery space to open an "art gallery concept store and café[.]"  Id. ¶¶ 5.5, 5.16.  The marketing director told Nwosu that the space was not available.  Id. ¶ 5.6.

A few days later, Nwosu emailed the Four Seasons again, claiming that the marketing director had "lied to" her by denying her the opportunity to rent the space.  Opp'n Mot. Dismiss Ex. B at 1.  Another executive replied, reaffirming that the space was unavailable because the hotel had plans to "reclaim" the space for its own use.  Compl. ¶ 5.15.  Because the executive did not provide any details regarding the Four Seasons' plans, Nwosu concluded that the Four Seasons was unfairly refusing to lease her the space.  See id. ¶¶ 5.23, 5.33.

Nwosu also raised several complaints in her email about the quality of service she received as a guest in three different Four Seasons hotels.  Opp'n Mot. Dismiss Ex. B at 1.  She complained that the staff had messy appearances, room service served her tea in a mug instead of a teacup, some hotels provided only "3 star level[]" breakfast credits, and a floor towel in one of her rooms was frayed.  Id.

That same day, Nwosu entered into a short-term residential lease agreement with the Four Seasons Houston.  See Opp'n Mot. Dismiss Ex. A at 3–11.  The lease stipulated that housekeeping services would be provided three times a week and could be scheduled between 8 a.m. and 3 p.m.  Id. at 4.  A few weeks later, during the 2023 holiday season, Nwosu complained to hotel management that housekeeping was coming at inconvenient times.  See Opp'n Mot.

Dismiss Ex. B at 8–10. A Four Seasons staff member apologized for the inconvenience and told Nwosu that he "understood [Nwosu was] usually busy with work from 9am - 4pm daily," so the housekeeping staff would "always try to aim to service [her] room after 4pm[.]" Id. at 10. Nwosu was not pleased with this "regimented" schedule, however, and told the staff member that she would request housekeeping when she wanted it. Id. at 8–9. She instructed the staff not to "schedule [her] in." Id. at 9.

Three months later, Nwosu was still living at the Four Seasons Houston. Proposed Am. Compl. ¶¶ 5.40–5.41. One night, she called room service and asked that a piña colada be delivered to her at the pool. Id. ¶ 5.42. Nwosu claims the employee taking the order over the phone asked her to describe her appearance so the server could identify her. Id. Nwosu described herself as "brown skin girl with short afro hair." Id. ¶ 5.44. The employee allegedly called back a few minutes later and said that the hotel did not have a blender to make the drink and that the pool bar was closed. Id. ¶ 5.46. Later that night, Nwosu called guest services and told another employee what happened. Id. ¶ 5.47. The second employee purportedly called Nwosu back and told her the drink would be delivered in ten minutes. Id. ¶ 5.49. Since the second employee made the drink after the first said it was unavailable, Nwosu concluded that the first employee, who is white, deliberately denied her service because of her race. Id. ¶ 5.51.

B. <u>Procedural History</u>

Nwosu sued the Four Seasons, invoking the Court's diversity jurisdiction. Compl. ¶ 2; <u>see</u> 28 U.S.C. § 1332. Her complaint alleged "unfair or deceptive trade practice with malice" based on the Four Seasons' refusal to lease the gallery space to her and "breach of contract [and] gross negligence" based on the allegedly deficient service she received. Compl. ¶¶ 4.1–4.2 (capitalization modified). The Four Seasons moved to dismiss the complaint for failure to state a

3

claim.  Nwosu opposed and filed a jury-trial demand and a motion for sanctions under Federal Rule of Civil Procedure 11.  Nwosu also filed a proposed amended complaint, which the Court construed as a motion for leave to amend because the time for amending of right had passed.  See Second Minute Order of April 8, 2024.  The proposed amended complaint added a claim for "overt discrimination based on [Nwosu's] race" due to the piña colada incident.  Proposed Am. Compl. ¶ 4.3.  Nwosu also filed a motion for summary judgment, which the Court struck without prejudice because it was premature.  See Minute Order of May 13, 2024.  Nwosu then filed a notice of interlocutory appeal of the Court's order striking her motion for summary judgment.  The Four Seasons opposed sanctions and leave to amend and moved to strike the jury-trial demand and the notice of interlocutory appeal.

All these matters are briefed and ripe for the Court's resolution.

## II.   Legal Standards

### A.   Subject Matter Jurisdiction

The plaintiff bears the burden of establishing subject matter jurisdiction.  Bain v. Off. of Att'y Gen., 648 F. Supp. 3d 19, 39 (D.D.C. 2022).  At the motion-to-dismiss stage, a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).  A court "may consider materials outside the pleadings" when determining its own jurisdiction.  See Jerome Stevens Pharms., 402 F.3d at 1253.

B.  <u>Amending a Complaint</u>

A plaintiff may amend her complaint more than 21 days after the defendant's motion to

dismiss has been served with the defendant's consent or the court's leave.  Fed. R. Civ. P.

15(a)(2).  Leave to amend is to be "freely given when justice so requires," but may be denied due

to futility.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)).

Amendment would be futile if the amended pleading would not survive a motion to dismiss.

<u>Moldea v. N.Y. Times Co.</u>, 22 F.3d 310, 319 (D.C. Cir. 1994).  "The party opposing amendment

bears the burden of showing why leave to file an amended pleading should not be granted."

<u>Schubarth v. Fed. Republic of Germany</u>, No. 14-cv-2140 (CRC), 2021 WL 7889662, at *4

(D.D.C. Jan. 25, 2021) (Cooper, J.) (quotation marks omitted).

C.  <u>Rule 11 Sanctions</u>

A court may impose sanctions under Rule 11 if a party's pleading or other representation

is "presented for an improper purpose, is frivolous, or lacks evidentiary support."  <u>Landrith v.</u>

<u>Roberts</u>, 999 F. Supp. 2d 8, 22–23 (D.D.C. 2013).  Rule 11 sanctions are "an extreme

punishment for filing pleadings that frustrate judicial proceedings."  <u>Id.</u> at 23 (quotation marks

omitted).  Courts consider "whether a reasonable inquiry would have revealed that there was no

basis in law or fact for the asserted claim."  <u>Sharp v. Rosa Mexicano, D.C., LLC</u>, 496 F. Supp.

2d 93, 100 (D.D.C. 2007) (quoting <u>Reynolds v. U.S. Capitol Police Bd.</u>, 357 F. Supp. 2d 19, 23

(D.D.C. 2004)).

**III.  Analysis**

The Four Seasons moves to dismiss the complaint under Rule 12(b)(6), raising several

serious objections to the merits of Nwosu's claims.  The Four Seasons does not, however, raise

any jurisdictional issues, perhaps because it would prefer to obtain a dismissal on the merits that might preclude future lawsuits by Nwosu.

The Court, however, must start with jurisdiction.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 109–10 (1998).  Because neither party is a U.S. citizen, the Court concludes that it lacks subject matter jurisdiction over the case and dismisses the case without prejudice. After resolving the jurisdictional issue, the Court will address the parties' remaining motions.

A.  Subject Matter Jurisdiction

As a threshold matter, Nwosu's notice of interlocutory appeal does not prevent the Court from proceeding.  In general, an appeal divests the district court of jurisdiction over the appealed matter.  United States v. DeFries, 129 F.3d 1293, 1302 (D.C. Cir. 1997).  But "[i]t is . . . settled that a notice of appeal from a non-appealable interlocutory order does not divest the district court of jurisdiction."  Yah Kai World Wide Enters., Inc. v. Napper, No. 11-cv-2174 (KBJ), 2016 WL 11129787, at *1 (D.D.C. Aug. 12, 2016) (Brown Jackson, J.); Kellogg v. Watts Guerra LLP, 41 F.4th 1246, 1259 (10th Cir. 2022) ("[A] district court can proceed when the appeal involve[s] a non-appealable order."); see also DeFries, 129 F.3d at 1302–03 (noting with approval other circuits' similar holdings).

Here, the Court had not entered an appealable order before Nwosu appealed.  With rare exception, "a party is entitled to a single appeal, to be deferred until final judgment has been entered."  Abdelhady v. George Wash. Univ., 89 F.4th 955, 957 (D.C. Cir. 2024) (quoting Digit. Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868 (1994)).  When Nwosu filed her notice of appeal, the Court had not yet issued a final judgment in this case.  Nor had the Court entered any orders that can be appealed before final judgment, as the Court had not entered a collateral order appealable 28 U.S.C. § 1291, an injunction appealable under 28 U.S.C. § 1292(a), or an

order certifying a question for appeal under 28 U.S.C. § 1292(b).  Therefore, Nwosu's notice of

appeal does not prevent the Court from determining its subject matter jurisdiction, to which it

now turns.

The complaint invokes diversity jurisdiction under 28 U.S.C. § 1332.  Diversity

jurisdiction generally permits suits to be heard in federal court if the amount in controversy

exceeds $75,000 and the parties are citizens of different states.  See id. § 1332(a).  Federal courts

may not, however, hear suits between parties who are not citizens of the United States.  See U.S.

Const. Art. III § 2 cl. 1 ("The judicial power shall extend to all cases . . . between a state, or the

citizens thereof, and foreign states, citizens, or subjects." (capitalization modified)); Mossman v.

Higginson, 4 U.S. 12, 14 (1800) (holding that Article III limits Congress to authorizing suits

between a U.S. citizen and a foreigner).

Here, it appears that neither Nwosu nor the Four Seasons is a U.S. citizen.  The complaint

alleges that Nwosu is a Nigerian citizen.  Compl. ¶ 2.  It does not allege that she is a U.S. citizen.

And while Nwosu lists a Maryland address on various filings, her residence status does not

matter.  In Saadeh v. Farouki, 107 F.3d 52 (D.C. Cir. 1997), the D.C. Circuit confronted an

amendment to the diversity jurisdiction statute that provided that "an alien admitted to the United

States for permanent residence shall be deemed a citizen of the State in which such alien is

domiciled."  Id. at 55 (quoting 28 U.S.C. § 1332(a) (1988)).  The D.C. Circuit, however,

narrowed that amendment and held that Congress did not intend to "abrogate[e] the longstanding

rule that complete diversity is destroyed in lawsuits between aliens" by conferring jurisdiction

over suits between a noncitizen living in the U.S. and a noncitizen living elsewhere.  Id. at 60.

Instead, the Court concluded that Congress intended to eliminate diversity jurisdiction for suits

between a U.S. citizen and a noncitizen who live in the same state.  Id.  Congress later removed

the deeming language and specifically carved out cases between U.S. citizens and foreign

citizens living in the same state.  See Federal Courts Jurisdiction and Venue Clarification Act of

2011, Pub. L. No. 112-63, § 101, 125 Stat. 758, 759 (2011).  In light of Saadeh and Congress's

apparent agreement with it, the Court concludes that diversity jurisdiction does not apply to suits

between noncitizens regardless of whether they reside in the United States.  See also Tagger v.

Strauss Grp., 951 F.3d 124, 127–28 (2d Cir. 2020) ("[W]e hold that section 1332(a)(2) does not

give the district court jurisdiction over a suit by a permanent resident alien against a non-resident

alien[.]").

    Turning to the Four Seasons, it is a Canadian citizen.  For diversity-jurisdiction purposes,

a corporation is a citizen of every domestic state and every foreign state in which it is

incorporated or has its principal place of business.  28 U.S.C. § 1332(c)(1).  A corporation's

principal place of business is typically where it is headquartered.  Hertz Corp. v. Friend, 559 U.S.

77, 81 (2010).  Here, the complaint alleges that the Four Seasons "is a Canadian corporation"

and is "headquartered in Canada."  Compl. ¶¶ 1–2.  The Court also takes judicial notice of

government websites containing information consistent with these allegations.  See Four Seasons

Hotel Limited Hotels Quatre Saisons Limitee, Ontario Business Registry (listing the Four

Seasons as an "Ontario Business Corporation" governed by Ontario law with a "Head Office

Address" in "Toronto, Ontario, Canada")[1]; Four Seasons Hotels Inc., Notice of Special Meeting

and Management Information Circular, Sec. & Exch. Comm'n (Feb. 27, 2007) (describing the

Four Seasons as "a corporation existing under the laws of the Province of Ontario")[2]; see also

---

[1] https://www.appmybizaccount.gov.on.ca/onbis/corporations/viewInstance/view.pub?
id=280aa9d4fbca6577ccb365bb8f57e85ab05cf4e1d141bbf9fd4cbdcdf722c910

[2] https://www.sec.gov/Archives/edgar/data/1030555/000104746907001452/a2176345
zex-99_a1.htm

Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Hum. Servs., 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.").

That the Four Seasons operates hotels across the United States does not change the outcome.  At the very most, those branches suggest that the Four Seasons is also a citizen of certain U.S. states.  But they do not change the fact that the Four Seasons is a citizen of Canada and therefore a foreign corporation.  See Enomoto v. Four Seasons Hotels Ltd., No. CV 19-00652 JAO-WRP, 2019 WL 7285553, at *2 (D. Haw. Dec. 27, 2019) ("Although Plaintiffs add that Four Seasons has a principal place of business in the United States (as well as Canada), its Canadian citizenship cannot be ignored when testing for diversity." (citing Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A., 20 F.3d 987, 990–91 (9th Cir. 1994))).

Because this suit is between a noncitizen and a foreign corporation, the Court lacks diversity jurisdiction over this case.  The parties do not assert, and the Court is not aware of, any other basis for jurisdiction.  For instance, the complaint raises only state-law claims, which precludes federal question jurisdiction.  See Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) ("[F]ederal [question] jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.").  Accordingly, the Court will dismiss the case without prejudice.  See Givens v. Bowser, 111 F.4th 117, 122–23 (D.C. Cir. 2024) ("[A]s a general rule, claims dismissed without an adjudication on the merits should be dismissed without prejudice, rather than with prejudice." (quotation marks omitted)).

B.  Remaining motions

Four motions remain: (1) Nwosu's motion for leave to amend; (2) Nwosu's motion for sanctions; (3) the Four Seasons' motion to strike Nwosu's jury demand; and (4) the Four Seasons' motion to strike Nwosu's notice of appeal.

First, the Court denies Nwosu's motion for leave to amend for futility.  Amendment would be futile if the proposed amended complaint would not survive a motion to dismiss. Moldea, 22 F.3d at 319.  Here, Nwosu's proposed amended complaint does not cure the jurisdictional defects identified by the Court above.  Instead, it adds a fourth claim for racial discrimination stemming from the Four Seasons' refusal to lease the Washington, D.C. space to her and the Four Seasons Houston's alleged handling of her piña colada order.  See Proposed Am. Compl. ¶¶ 4.3, 5.40–5.57.  None of the new allegations has anything to do with jurisdiction.

Second, the Court turns to Nwosu's motion for Rule 11 sanctions based on the Four Seasons' motion to dismiss.  The Supreme Court has held that a district court may decide a sanctions motion even if it lacks subject matter jurisdiction over the underlying case, as "[s]uch an order implicates no constitutional concern because it 'does not signify a district court's assessment of the legal merits of the complaint.'"  Willy v. Coastal Corp., 503 U.S. 131, 138 (1992) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990)); see In re Orthopedic "Bone Screw" Prods. Liab. Litig., 132 F.3d 152, 156 (3d Cir. 1997) ("Rule 11 sanctions, which are imposed on persons appearing before the court, may be upheld in the absence of jurisdiction where they are consistent with a court's inherent power to manage its docket and maintain order.").

The Court denies Nwosu's motion.  Sanctions are "an extreme punishment" for frivolous filings and arguments for which "a reasonable inquiry would have revealed that there was no

basis in law or fact[.]"  <u>Henok v. Chase Home Fin., LLC</u>, 926 F. Supp. 2d 100, 104 (D.D.C. 2013) (quotation marks omitted).  The Four Seasons' motion to dismiss falls well short of that high bar, even if it did not raise any jurisdictional issues.  Indeed, some of the grounds for dismissal advanced by the Four Seasons may well be meritorious.

Third, the Court denies the Four Seasons' motion to strike Nwosu's jury demand as moot following dismissal of the case.

Finally, the Court grants the Four Seasons' motion to strike Nwosu's notice of appeal because, as explained above, none of the Court's orders were appealable at the time of Nwosu's interlocutory appeal.  The Court notes, however, that Nwosu may file a new notice of appeal within 30 days of the Court's order disposing of this case.  <u>See</u> Fed. R. App. P. 4(a)(1)(A).

**IV.  Conclusion**

For these reasons, the Court lacks subject matter jurisdiction and must dismiss the case. It further denies as moot the Four Seasons' motion to dismiss for failure to state a claim, denies Nwosu's motion for leave to amend, denies Nwosu's motion for sanctions, denies as moot the Four Seasons' motion to strike Nwosu's jury demand, and grants the Four Seasons' motion to strike Nwosu's notice of appeal.  A separate order accompanies this opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  September 27, 2024